UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALI MUHAMMAD,

                       Plaintiff,

   v.                                                   9:24-CV-0872
                                                            (BKS/MJK)

MAUREEN MURPHY, et al.,

                       Defendants.
_____

APPEARANCES:

ALI MUHAMMAD
Plaintiff, pro se
18-B-2952
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902


BRENDA K. SANNES
Chief United States District Judge

**DECISION and ORDER**

**I.    INTRODUCTION**

Plaintiff Ali Muhammad commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"). By Decision and Order entered on August 26, 2024, this Court granted plaintiff's IFP Application, and following review of the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed each of plaintiff's Section 1983 claims without prejudice

1

pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.  Dkt. No. 4 ("August 2024 Order").

Presently before the Court is plaintiff's amended complaint.  Dkt. No. 8 ("Am. Compl.").

## II.  SUFFICIENCY OF THE AMENDED COMPLAINT

### A.  The Complaint and August 2024 Order

In the complaint, plaintiff alleged, *inter alia*, that on two separate occasions totaling approximately thirty days, he was transferred from correctional facilities operated by the New York State Department of Corrections and Community Supervision ("DOCCS") to the Onondaga County Justice Center, where he was placed in restrictive confinement and denied certain medical treatment.  *See generally*, Am. Compl.

The complaint named the Onondaga County Justice Center and the following officials as defendants: (1) Onondaga County Justice Center Chief Deputy Administrator Murphy; (2) Onondaga County Justice Center Chief Deputy Ferguson; (3) Onondaga County Sheriff Shelley; and (4) Wellpath Medical Nurses Jane Doe #1-4.  Compl. at 1-3.

The complaint was liberally construed to assert the following Section 1983 claims against the named defendants: (1) Eighth Amendment conditions-of-confinement claims; (2) Eighth Amendment medical indifference claims; and (3) Fourteenth Amendment due process claims based on plaintiff's restrictive confinement.  *See* August 2024 Order at 6.  Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), plaintiff's Section 1983 claims were dismissed without prejudice.  *Id*. at 7-22.

### B.  Review of the Amended Complaint

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more government employees, his amended complaint must be reviewed in accordance with 28

U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the August 2024 Order and it will not be restated in this Decision and Order.  *See* August 2024 Order at 2-4.

As with the original complaint, plaintiff's amended complaint re-asserts Section 1983 claims based on alleged wrongdoing that occurred during plaintiff's confinement at the Onondaga County Justice Center for approximately twenty days in March 2024, and approximately ten days in June 2024.  *See generally*, Am. Compl.  While materially similar to the original complaint, the amended complaint differs from the original complaint in a few respects.

First, the amended complaint includes new allegations detailing how plaintiff interacted with certain officials while he was housed at the Onondaga County Justice Center.  Second, the amended complaint includes additional allegations regarding deprivations that plaintiff suffered during his restrictive confinement in March 2024.  Third, plaintiff has attached exhibits to his amended complaint, which clarify that he received disciplinary sanctions in February 2024, while in DOCCS's custody, and these sanctions were the reason why he was placed in restrictive confinement while housed at the Onondaga County Justice Center.  *See generally*, Dkt. No. 8-1.

The following new facts are set forth as alleged in the amended complaint, or indicated in documents attached thereto.

On February 5, 2024, plaintiff was involved in an incident with certain non-party DOCCS officials, which resulted in his receipt of a misbehavior report charging him with various rules violations, including assault on staff and violent conduct.  Dkt. No. 8-1 at 1.  On

3

February 8, 2024, a disciplinary hearing was held, and that same day, a non-party DOCCS official found plaintiff guilty of one or more charges in the misbehavior report and sentenced him to 200 days of confinement in the special housing unit, along with 200 days of lost package and commissary privileges.  *Id.*

On March 7, 2024, plaintiff was transported to the Onondaga County Justice Center. Am. Compl. at 2.  After plaintiff was "booked in" by Deputy Willis, he was "brought directly to segregated housing" by Deputies Willis, Demko and Cullen and "placed on Admin Segregation."  Am. Compl. at 2-3.  Thereafter, on an unidentified date, Deputy Morns informed plaintiff that he "would not be receiving any change of clothes because [he] would not be there for long."  *Id.* at 2.  Plaintiff remained at the facility in segregated confinement for 20 days "with no clean clothes, no hygiene, no correspondence materials, paper, pen, envelopes[,]" and he was required to wear handcuffs and waist chain shackles during recreation based on an "order signed by Captain Moore . . . and Captain Guillame."  *Id.*

At some point, plaintiff was "diagnosed" by one or more unidentified officials with "neuropathy in his leg," and also had "[a] broken front tooth, swollen ankle and sinus brady cardia."  Am. Compl. at 2.  Plaintiff did not receive "medical attention" from any nurse or the facility doctor.  *Id.*  Plaintiff was returned to DOCCS's custody on March 27, 2024.  *Id.*

On June 11, 2024, plaintiff returned to the Onondaga County Justice Center and was "again placed on Administrative Segregation" and brought by Deputies Willis, Demko, and Cullen to "Segregated Housing."  Am. Compl. at 2-3.  Thereafter, plaintiff spoke with Sergeant McPartland and "submitted a grievance" regarding his placement in restrictive confinement.  *Id.*; *see also* Dkt. No. 8-1 at 2-3.

On or about June 13, 2024, Hearing Officer Deputy Kolakowski authored a letter addressed to plaintiff, which advised him that his restrictive confinement and placement in restraints during out-of-cell movement was due to disciplinary sanctions imposed while he was in DOCCS's custody, and "the nature of the charges from the incident" at Elmira Correctional Facility.  Dkt. No. 8-1 at 3; Am. Compl. at 3.

On June 21, 2024, plaintiff was "sent to Upstate Medical Trauma Center for chest pains" and "kept overnight."  Am. Compl. at 3.  The treating physician at the hospital "requested [a] 14 day cardiac monitor event" but one or more unidentified officials employed at the Onondaga County Justice Center "told [the] hospital to not place [one] on plaintiff" because that would happen when he was returned to DOCCS's custody.  *Id.*  The next morning, plaintiff was returned to DOCCS's custody.  *Id.*

Because the amended complaint does not contain a "Parties" section, the Court will assume, out of an abundance of solicitude, that plaintiff intended to name each official referenced in the body of his pleading as a defendant, along with Onondaga County, which is the only defendant identified in the caption.

The Court liberally construes the allegations in the amended complaint to assert the following Section 1983 claims against the defendants: (1) Eighth Amendment conditions-of-confinement claims; (2) Eighth Amendment medical indifference claims; and (3) Fourteenth Amendment due process claims.

For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

### C. Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. Municipal Liability

Municipal liability is limited under Section 1983 by *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Thus, to successfully state a claim for *Monell* liability, a plaintiff must "make factual allegations that support a plausible inference that the [alleged] constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality." *Missel v. Cnty. of Monroe*, 351 Fed. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of N.Y.*, 524 F.3d 346, 350 (2d Cir. 2008)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis

for the tort of its employee." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 36 (2010) ("[I]n *Monell* the Court held that 'a municipality cannot be held liable' solely for the acts of others, e.g., 'solely because it employs a tortfeasor.'" (quoting *Monell*, 436 U.S. at 691)).

As noted, the amended complaint raises claims based on plaintiff's placement in restrictive confinement, the out-of-cell restraint order, denying plaintiff access to a change of clothes and hygiene supplies, and depriving plaintiff of desired medical treatment. The pleading, however, is devoid of allegations which plausibly suggest that any of the individuals who were responsible for this alleged wrongdoing were policymaking officials, or acting pursuant to a "custom" or "policy." Indeed, plaintiff does not even identify a "custom" or "policy" that resulted in the alleged wrongdoing, let alone describe it in detail. *See Valdiviezo v. Boyer*, 752 Fed. App'x 29, 31 (2d Cir. 2018) ("A 'general and conclusory allegation' of a municipal policy or custom fails to state a facially plausible *Monell* claim." (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015)); *Littlejohn*, 795 F.3d at 315 (noting that to satisfy *Monell*'s policy or custom requirement, a plaintiff must show either that the challenged practice "was so persistent or widespread as to constitute a custom or usage with the force of law," or that the "practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." (internal quotation marks omitted)); *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 277 (W.D.N.Y. 2014) (conclusory allegations which merely recite the elements for stating a *Monell* claim are insufficient to state a claim for municipal liability) (citing, *inter alia*, *Genovese v. Town of Southhampton*, 92 F. Supp. 2d 8, 25 (E.D.N.Y. 2013)); *Bradley v. City of New York*, No. 08-CV-1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("In terms of what a complaint must allege to survive

7

a Motion to Dismiss, the Second Circuit has held that 'the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds*, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)).

Moreover, insofar as the amended complaint may allege that one or more County employees violated plaintiff's constitutional rights, those allegations fail to state a claim against Onondaga County because a municipality may not be liable on the basis of respondeat superior. *See Monell*, 436 U.S. at 691.

In light of the foregoing, and notwithstanding a very liberal interpretation of plaintiff's amended complaint, plaintiff's Section 1983 claims against Onondaga County are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Conditions-of-Confinement Claims

The legal standard governing Eighth Amendment conditions-of-confinement claims was discussed at length in the August 2024 Order and will not be restated herein. *See* August 2024 Order at 11-14.

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's conditions-of-confinement claim against defendants Morns, Willis, Demko, and Cullen based on his placement in a cell for 20 days without a change of clothing or hygiene supplies survives sua sponte review and

requires a response.[1]  In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's conditions-of-confinement claims based on the order that he wear full restraints during out-of-cell movement, and his placement in restrictive confinement for ten days in June 2024.

Insofar as plaintiff alleges that he was required to wear full restraints during out-of-cell movement at the Justice Center, the pleading does not allege that plaintiff was required to wear full restraints while in his cell, or that the restraints caused him physical harm, or prevented him from leaving his cell or exercising.  Thus, the Court has no basis to plausibly infer that requiring plaintiff to wear restraints during out-of-cell movement on two separate occasions totaling thirty days caused plaintiff to suffer a serious deprivation of a basic human need.  See *Abreu v. Lake*, No. 9:17-CV-1312 (DNH/DEP), 2018 WL 11236520, at *25 (N.D.N.Y. Jan. 22, 2018) (dismissing Eighth Amendment claim based on requiring inmate-plaintiff to wear a jumpsuit whenever he exited his cell because the plaintiff "concedes that the Jumpsuit was imposed due to his lewd conduct within his cell" and failed to "plead[ ] facts suggesting that the use of the Jumpsuit deprived him of basic human needs or that the Jumpsuit restricted [his] movement, prohibit[ed] him from leaving his cell, or preclude[d] [him] from attending programs or visit"), *upholding dismissal on reconsideration sub nom. Abreu v. Donahue*, 2018 WL 11236521 (N.D.N.Y. Mar. 13, 2018); *Selby v. Martin*, 84 Fed. App'x 496,

---

[1] The amended complaint does not allege that any other defendants were aware that plaintiff was not given a change of clothing and hygiene supplies, or made rounds while plaintiff was housed in segregated confinement in March 2024.  In addition, the pleading does not allege that plaintiff requested a change of clothing and hygiene supplies from any of the named defendants at any point, or spoke to any of them about his desire for a change of clothing and hygiene supplies.  Thus, the Court is unable to plausibly infer that any other officials were personally involved in depriving plaintiff of access to a change of clothing and hygiene supplies in March 2024.

498 (6th Cir. 2003) (finding no Eighth Amendment violation due to the use of leg irons and belly chains that the plaintiff was directed to wear after being found guilty of attempted escape); *Allah v. Hilton*, No. 9:13-CV-0826 (FJS/TWD), 2016 WL 11265991, at *12 (N.D.N.Y. May 9, 2016) (same), *report and recommendation adopted by* 2017 WL 1194502 (N.D.N.Y. Mar. 31, 2017); *Harris v. Horel*, No. 06-CV-7761, 2009 WL 2761339, at *4 (N.D. Cal., Aug. 31, 2009) (finding no Eighth Amendment violation as the exposure jumpsuit did not restrict the plaintiff from leaving his cell, but rather required the plaintiff to wear the jumpsuit when he was outside his cell).

In addition, the amended complaint lacks any details regarding the incident that formed the basis of plaintiff's disciplinary sanctions in February 2024, and plaintiff does not allege that he was innocent of the charges levied in the misbehavior report.  Moreover, plaintiff does not allege that he complained to any officials about any injuries or difficulties arising from the out-of-cell shackling order.  Thus, the Court also has no basis to plausibly infer from the allegations in the amended complaint that plaintiff was required to wear restrictive handcuffs during out-of-cell movement out of deliberate indifference to his well-being.  *See Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996) (finding that keeping inmate on lockdown and "full restraint" status without outdoor exercise for a period of approximately twenty-two days was insufficient to satisfy the subjective prong and therefore does not violate the Eighth Amendment); *Gibson v. Rosati*, No. 9:13-CV-0503 (GLS/TWD), 2017 WL 1534891, at *19 (N.D.N.Y. Mar. 10, 2017) ("The imposition of a restraint order only violates Eighth Amendment protections if imposed restraint is 'totally without penological justification, grossly disproportionate, or involves the unnecessary and wanton infliction of pain.' *Horne v. Coughlin*, 155 F.3d 26, 31 (2d Cir. 1998) . . . . This is because prison officials

are granted wide latitude to place restraints on inmates." (quoting *Walker v. LaValley*, No. 9:12-CV-807, 2014 WL 4744735, at *16 (N.D.N.Y. Sept. 23, 2014))), *report and recommendation adopted by* 2017 WL 1512371 (N.D.N.Y. Apr. 27, 2017).

Insofar as plaintiff was placed in restrictive confinement for ten days in June 2024, the amended complaint does not allege that plaintiff was denied a change of clothing and hygiene supplies during this time. Moreover, as noted in the August 2024 Order, "in general, housing an incarcerated individual in restrictive confinement for periods of less than thirty days does not, without more, constitute cruel and unusual punishment, even if the restrictive confinement results in a loss of privileges." August 2024 Order at 12-13 (collecting cases).

Accordingly, plaintiff's conditions-of-confinement claims based on the order that he wear full restraints during out-of-cell movement, and his placement in restrictive confinement for ten days in June 2024 are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 3. Medical Indifference Claims

The legal standard governing Eighth Amendment medical indifference claims was discussed at length in the August 2024 Order and will not be restated herein. *See* August 2024 Order at 14-17.

The allegations in the amended complaint with respect to plaintiff's medical indifference claims are materially similar to the allegations in the original complaint. Moreover, as with the original complaint, the amended complaint fails to explain how and when plaintiff's medical concerns were made known to officials at the Onondaga County Justice Center during his initial stay at the facility. Indeed, although plaintiff identifies injuries

that he was suffering from when he arrived at the facility in March 2024, the amended complaint is devoid of allegations which plausibly suggest that (1) plaintiff requested and was denied medical treatment at any point, or (2) any official at the Justice Center was otherwise aware of plaintiff's medical condition and needs. In the absence of such allegations, the Court has no basis to plausibly infer, simply because plaintiff did not receive medical treatment that he desired, that any official acted with deliberate indifference to his serious medical needs.

Furthermore, with respect to plaintiff's second stay at the facility, the amended complaint acknowledges that plaintiff was sent to an outside hospital based on a medical issue. Am. Compl. at 3. In addition, the amended complaint does not identify which official(s) asked the treating physician at the hospital to not provide plaintiff with a "cardiac monitor[,]" or explain how plaintiff became aware of this alleged directive. Nor does the pleading allege that plaintiff suffered any adverse health conditions as a result of his delayed receipt of the monitor. Thus, the amended complaint also fails to adequately allege that any named defendant acted with deliberate indifference to plaintiff's serious medical needs during his stay at the Onondaga County Justice Center in June 2024.

Accordingly, and for the reasons set forth in the August 2024 Order, plaintiff's medical indifference claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 4. Due Process Claims

The legal standard governing Fourteenth Amendment due process claims was discussed at length in the August 2024 Order and will not be restated herein. *See* August 2024 Order at 17-20.

The allegations in the amended complaint with respect to plaintiff's due process claims are materially similar to the allegations in the original complaint. In addition, it is now clear from the documents attached to the amended complaint that plaintiff was placed in restrictive confinement while housed at the Onondaga County Justice Center because of the disciplinary sanctions he received while in DOCCS's custody. *See* Dkt. No. 8-1 at 1, 3. Furthermore, the amended complaint lacks allegations which plausibly suggest that plaintiff was denied the process to which he was entitled during the hearing that resulted in his disciplinary sanctions. Thus, plaintiff has failed to adequately allege that any of the named defendants violated plaintiff's constitutional rights by placing him in restrictive confinement for a total of thirty days while he was housed at the Onondaga County Justice Center.

Accordingly, and for the reasons set forth in the August 2024 Order, plaintiff's due process claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### III.     CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint (Dkt. No. 8) is accepted for filing and will supersede and replace the original complaint as the operative pleading; and it is further

**ORDERED** that the Clerk shall add the following officials to the docket as defendants: (1) Deputy Jayuan Willis; (2) Deputy Demko; (3) Deputy Cullen; (4) Deputy Jesse Morns; (5) Captain Moore; (5) Captain Guillame; (6) Sergeant McPartland; and (7) Hearing Officer Deputy Kolakowski; and it is further

**ORDERED** that plaintiff's Eighth Amendment conditions-of-confinement claim against defendants Willis, Demko, Cullen, and Morns **SURVIVES sua sponte review** and requires a response; and it is further

**ORDERED** that plaintiff's remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the Clerk shall **TERMINATE** all defendants other than Willis, Demko, Cullen, and Morns; and it is further

**ORDERED** that the Clerk shall issue summonses and forward them, along with four copies of the amended complaint, to the United States Marshal for service upon defendants Willis, Demko, Cullen, and Morns. The Clerk shall also forward a copy of the summons and amended complaint by mail to the Onondaga County Attorney's Office, together with a copy of this Decision and Order; and it is further

**ORDERED** that upon the completion of service, a response to plaintiff's amended complaint be filed by Willis, Demko, Cullen, and Morns, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this

Court. Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action; and it is further

**ORDERED** that the Clerk of the Court shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED**.

Dated: January 6, 2025
Syracuse, NY

*Brenda K. Sannes*
Brenda K. Sannes
Chief U.S. District Judge